UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
VALORA SANTIAGO,

                              Plaintiff,

-against-

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
----------------------------------------------------------------X

**MEMORANDUM & ORDER**

**08-CV-2443 (NGG)**

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Valora Santiago ("Santiago"), *pro se*, brings this action under 42 U.S.C. §§ 405(g) and 1383(c)(3). (Compl. (Docket Entry # 1).) Santiago seeks judicial review of the Social Security Administration's ("SSA's") denial of her claim for Supplemental Security Income ("SSI") and disability insurance benefits ("DIB"). (Id.) The Commissioner moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Def.'s Mot. (Docket Entry # 20).) As set forth below, the court grants the Commissioner's motion.

**I.  STANDARD OF REVIEW**

**A.  Rule 12(c)**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." The standard of review under a Rule 12(c) motion is the same standard applied under a Rule 12(b)(6) motion. Bank of N.Y. v. First Millennium, Inc., 607 F.3d 905, 922 (2d Cir. 2010). To survive a Rule 12(b)(6) motion, the complaint must contain "sufficient factual matter . . . to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1948 (2009). A court is required "to accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." Vietnam Ass'n for Victims of Agent Orange v. Dow Chem.

Co., 517 F.3d 104, 115 (2d Cir. 2008). In addition to considering the pleadings, the court may consider "statements or documents incorporated by reference in the pleadings . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit." ATSI Commc'ns, Inc. v. Schaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007). Where a plaintiff proceeds *pro se*, the court reads her submissions liberally and interprets them as raising the strongest arguments they suggest. See McEachin v. McGuinnis, 357 F.3d 197, 200 (2d Cir. 2004); Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994). Nonetheless, "although [courts] construe *pro se* submissions liberally, [they] do not create arguments out of whole cloth." United States v. Bethea, No. 09-4125-cr, 2010 WL 2803086, at *1 (2d Cir. July 19, 2010).

B.  Administrative Review

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moran v. Astrue, 569 F.3d 108, 112 (2d Cir. 2009). "[I]t is up to the agency, and not [the] court, to weigh the conflicting evidence in the record." Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir. 1998). "Legal error" consists of incorrect determinations on points of statutory or regulatory law made by the Commissioner. Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984). In assessing a legal determination made by the Commissioner, "[the] court cannot fulfill its statutory and constitutional duty to review the decision of the administrative agency by simply deferring to the factual findings of the ALJ. Failure to apply the correct legal standards is grounds for reversal." Id.

2

## II. BACKGROUND

Santiago was born on February 14, 1956. (Administrative Transcript ("Tr.") (Docket Entry # 7) at 43.) On May 10, 2000, Santiago filed a claim for SSI and DIB, alleging a disability onset date of August 19, 1999. (Id. at 124-26.) After the SSA denied Santiago's application, she requested a rehearing and the SSA denied her request. (Id. at 100-103.) Santiago then requested a hearing before an administrative law judge ("ALJ"). (Id. at 104.) On January 15, 2002, ALJ Marilyn J. Hoppenfeld held a hearing regarding Santiago's claim. (Id. at 28-89.) On February 19, 2002, the ALJ issued an unfavorable decision, and Santiago sought review before the SSA Appeals Council. (Id. at 8-9.) The Appeals Council denied Santiago's request for review on June 19, 2002. (Id.)

On August 14, 2002, Santiago filed an action in this court challenging the SSA's denial of her claim. Complaint, Santiago v. Barnhart, No. 02-cv-4529 (DGT) (E.D.N.Y. Aug. 14, 2002). On February 4, 2004, the court remanded the case to the Commissioner. (Tr. at 333.) On June 10, 2005, the ALJ held another hearing. (Id. at 1768-81.) After obtaining additional medical documentation of Santiago's claim, the ALJ issued an unfavorable decision on May 25, 2007. (Id. at 317-31.) Santiago again sought review before the Appeals Council, which again denied her request for review on April 15, 2008. (Id. at 307-309.) By operation of 42 U.S.C. § 405(g), this became the final judgment of the Commissioner. Santiago timely filed her Complaint on June 11, 2008. See 42 U.S.C. § 405(g).

3

## III. DISCUSSION

### A. Standard of Review for Determining Disability

To determine whether a claimant is entitled to SSI or DIB, an ALJ utilizes a five-step analysis, as set forth in 20 C.F.R. § 404.1520(a)(4). The Second Circuit, in <u>Dixon v. Shalala</u>, described this five-step analysis:

> The first step in the sequential process is a decision whether the claimant is engaged in "substantial gainful activity." If so, benefits are denied.
>
> If not, the second step is a decision whether the claimant's medical condition or impairment is "severe." If not, benefits are denied.
>
> If the impairment is "severe," the third step is a decision whether the claimant's impairments meet or equal the "Listing of Impairments" . . . of the social security regulations. These are impairments acknowledged by the Secretary to be of sufficient severity to preclude gainful employment. If a claimant's condition meets or equals the "listed" impairments, he or she is conclusively presumed to be disabled and entitled to benefits.
>
> If the claimant's impairments do not satisfy the "Listing of Impairments," the fourth step is assessment of the individual's "residual functional capacity," i.e., his capacity to engage in basic work activities, and a decision whether the claimant's residual functional capacity permits him to engage in his prior work. If the residual functional capacity is consistent with prior employment, benefits are denied.
>
> If not, the fifth and final step is a decision whether a claimant, in light of his residual functional capacity, age, education, and work experience, has the capacity to perform "alternative occupations available in the national economy." If not, benefits are awarded.

54 F.3d 1019, 1022 (2d Cir. 1995).

### B. The ALJ's Decision

#### 1. Steps One, Two, and Three

Under step one of the analysis, the ALJ found that Santiago had not engaged in substantial gainful activity since her alleged disability onset date. (Tr. at 322.) Under step two, the ALJ found that Santiago had several medically severe impairments: mechanical low back

4

pain, pain syndrome, and cardiomegaly. (Id. at 323.) And under step three, the ALJ concluded that none of Santiago's medically severe impairments met or exceeded the Listing of Impairments. (Id.) Neither the Commissioner nor Santiago dispute any of these findings.

2. Step Four

Under step four, the ALJ found that Santiago possessed the residual functional capacity to return to her previous work as a cashier. (Tr. at 330.) Consequently, the ALJ determined that Santiago was not entitled to SSI or DIB. (Id.) Read liberally, Santiago's Opposition argues that the ALJ erred in this determination by failing to faithfully apply the treating physician rule, failing to properly account for Santiago's subjective complaints of pain, and by basing her decision that Santiago could return to her work as a cashier on less than substantial evidence. (Pl.'s Opp'n (Docket Entry # 23) at 2); see also McEachin, 357 F.3d at 200.

a. *The Treating Physician Rule*

The treating physician rule requires an ALJ to give a claimant's treating physician's opinion "controlling weight" if the treating physician's "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). "[A]n ALJ may not reject a treating physician's disability opinion based 'solely' on internal conflicts in that physician's clinical findings." Carvey v. Astrue, No. 09-cv-4438, 2010 WL 2264932, at *2 (2d Cir. June 7, 2010) (citing Balsamo v. Chater, 142 F.3d 75, 80 (2d Cir. 1998)). But, where other medical opinions in the record contradict the treating physician's opinion, an ALJ need not give the treating physician's opinion controlling weight. (Id.)

If an ALJ does not give controlling weight to the treating physician's opinion, the ALJ must assess several factors to determine how much weight to give the assessment. 20 C.F.R.

5

§ 404.1527(d)(2). An ALJ must assess the length, nature, and extent of the treatment relationship; the "supportability" of the medical opinion; the consistency of the opinion with other evidence in the record; the treating physician's specialization, if any; and any other factors the claimant may bring to an ALJ's attention. 20 C.F.R. § 404.1527(d)(2)-(d)(6). While an ALJ need not recite each one of these factors by rote, it must be clear from her decision that "the ALJ applied the substance of the treating physician rule." Halloran v. Barnhart, 362 F.3d 28, 32 (2d Cir. 2004). In any event, an ALJ must provide "good reasons" for the lack of weight given to the treating physician's opinion. Kennedy v. Astrue, 343 F. App'x 719, 722 (2d Cir. 2009). "A reasonable basis for doubt that the ALJ applied the correct legal standard in determining the weight to afford the treating physician can be grounds for remand." Sutherland v. Barnhart, 322 F. Supp. 2d 282, 291 (E.D.N.Y. 2004) (citing Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir. 1987)).

Construed most favorably to her, Santiago argues that the ALJ should have afforded the opinion of Dr. Irvin Kotkin, her treating physician, more weight. (Pl.'s Opp'n at 2.) Dr. Kotkin opined that Santiago was physically disabled, and therefore, only able to perform sedentary work. In her decision, the ALJ noted that the weight of medical evidence presented to the Commissioner contradicted Dr. Kotkin's opinion that Santiago was physically disabled. (Tr. at 329.) Specifically, the ALJ noted that Dr. Kotkin's opinion was "based more upon subjective complaints of pain rather than neurological deficits or objective findings either by MRI, myelogram, or scans." (Id.) Prior to this finding, the ALJ detailed numerous medical tests based on such evidence that were either inconclusive or negative for the symptoms described by Dr. Kotkin. (Id. at 325-29.)

In deciding to not give Dr. Kotkin's opinion controlling weight, the ALJ took into account the length, nature, and extent of Dr. Kotkin's treatment relationship with Santiago, describing Santiago's visits with Dr. Kotkin, and their frequency as "once a year and 'as needed.'" (Id. at 329.) The ALJ further found that Dr. Kotkin's opinion lacked medical supportability because it primary relied on Santiago's subjective complaints, rather than medical tests. (Id.) The ALJ also described the opinion's inconsistency with other evidence in the record, namely negative thallium stress tests, cardiograms, and CT scans. (Id.) The ALJ did not discuss Dr. Kotkin's specialization, but nothing in the administrative record suggests one. The ALJ, therefore, hewed to the treating physician rule when she discounted Dr. Kotkin's opinion.

### b. *Subjective Complaints of Pain*

To assess a claimant's allegations concerning the severity of her disabilities, an ALJ must engage in a two-step analysis. First, "the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged." Genier v. Astrue, 606 F.3d 46, 49 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(b)). And second, "[i]f the claimant does suffer from such an impairment . . . the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record." Id. (internal quotations omitted) (citing 20 C.F.R. § 404.1529(a)). If an ALJ finds that the claimant's testimony is not consistent with the medical evidence of record, the ALJ must weigh the credibility of the claimant's testimony in light of

(1) the claimant's daily activities;

(2) the location, duration, frequency, and intensity of the pain;

(3) precipitating and aggravating factors;

7

(4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;

(5) any treatment, other than medication, that the claimant has received;

(6) any other measures that the claimant employs to relieve the pain; and

(7) other factors concerning the claimant's functional limitations and restrictions as a result of the pain.

Meadors v. Astrue, 370 F. App'x 179, 184 n.1 (2d Cir. 2010) (citing 20 C.F.R. § 404.1529(c)(3)).

In her opinion, the ALJ noted that Santiago's severe impairments "could reasonably be expected to produce the alleged symptoms, but that [Santiago's] statements concerning the intensity, persistence and limiting effects of these symptoms are not supported by the substantial medical record and not accepted [sic]." (Tr. at 329.) In making this determination, the ALJ noted Santiago's daily activities, which mostly consisted of cooking, shopping for food with the assistance of her brother, watching television, and laying down. (Id. at 323-24.) The ALJ also cataloged Santiago's symptoms of pain, precipitating and aggravating factors of her pain (such as bending down), and several medications Santiago took to alleviate her pain. (Id. at 323-28.) The ALJ further described all of Santiago's medical treatments, physical therapy, and attempts to engage in alternative medicine, such as acupuncture. (Id. at 326.) The ALJ also discussed Santiago's efforts to relieve pain, such as laying down. (Id. at 323.) Because she properly engaged in this analysis, the ALJ did not err by not accepting Santiago's testimony concerning the severity of her symptoms.

          c.     *Residual Functional Capacity to Perform Past Work*

To assess whether a claimant possesses the residual functional capacity to perform past work, an ALJ may rely on the testimony of a vocational expert ("VE"). Social Security Ruling 00-4p. The evidence presented to a VE of a claimant's limitations must "accurately reflect the

limitations and capabilities of the claimant involved." Calabrese v. Astrue, 358 F. App'x 274, 276 (2d Cir. 2009). The evidence "need not frame the claimant's impairments in the specific diagnostic terms used in the medical reports, but instead should capture the concrete consequences of those impairments." Id. at 277 (quoting England v. Astrue, 490 F.3d 1017, 1023 (8th Cir. 2007)).

The ALJ relied on the testimony of VE Andrew Pasternak to determine whether Santiago had the residual functional capacity to perform her past work as a cashier. (Tr. at 330.) The ALJ asked the VE to determine what jobs Santiago could perform given her educational background and past work history, assuming that she was able to engage in "light work activity." (Id.) Given these factors, the VE opined that Santiago would be able to return to her previous work as a cashier. Based on the ALJ's determination of Santiago's medical impairments, the assumptions considered by the VE accurately reflected Santiago's limitations and capabilities. See Calabrese, 358 F. App'x at 276. The ALJ, therefore, did not commit legal error in presenting this hypothetical to the VE at Santiago's hearing. Further, the ALJ based her decision on substantial evidence in that she considered the whole of the VE's testimony and properly cross-referenced Santiago's skill set with those jobs listed in the Dictionary of Occupational titles.

IV. CONCLUSION

For the reasons discussed above, Defendant's Motion for Judgment on the Pleadings is GRANTED. The Clerk of Court is directed to close this case.

SO ORDERED.

Dated: Brooklyn, New York
December 17, 2010

s/Nicholas G. Garaufis

NICHOLAS G. GARAUFIS
United States District Judge